John A. PENELLO, Regional Director of the Fifth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD

FREIGHT DRIVERS & HELPERS LOCAL 557, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.

Civ. No. 13769.

United States District Court
D. Maryland.
May 28, 1962.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel,

Julius G. Serot, Asst. Gen. Counsel, David C. Sachs, Regional Atty., Region 5, Alvin Lieberman and Dudley S. Knox, Attys., Baltimore, Md., for petitioner.

Jacob J. Edelman and Bernard W. Rubenstein, Baltimore, Md., for respondent.

A. Samuel Cook, Cook & Cluster, Baltimore, Md., for charging party.

THOMSEN, Chief Judge.

This petition filed by the Regional Director of the Fifth Region of the National Labor Relations Board (the Board), pursuant to sec. 10(*l*) of the National Labor Relations Act[1] (the Act), seeks a temporary injunction pending final adjudication of the Board of the matters involved in a charge filed by Dorsey Owings, Inc. (Dorsey), alleging that respondent (Local 557) has engaged in, and is engaging in, unfair labor practices within the meaning of sec. 8(b) (4) (i) and (ii) (B) of the Act.[2] As amended in 1959, the relevant portions of sec. 8(b) read as follows:

"It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \* \*

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:

\* \* \* \* \* \*

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, \* \* \*: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;"

The question before the court is whether the evidence shows that petitioner has reasonable cause to believe that respondent has engaged in such unfair labor practices, affecting commerce within the meaning of secs. 2(6) and (7) of the Act, 29 U.S.C.A. § 152(6, 7), and that a continuation of these practices will impair the policies of the Act, as set forth in sec. 1(b) thereof, 29 U.S.C.A. § 141 (b). The formal findings of fact set out in note 3 below are not disputed.

---

1. As amended September 14, 1959, 73 Stat. 544, 29 U.S.C.A. § 160(*l*).

2. As amended September 14, 1959, 73 Stat. 542, 29 U.S.C.A. § 158(b) (4) (i) and (ii) (B).

3. *Findings of Fact:*

"1. Petitioner is Regional Director of the Fifth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

"2. On or about April 19, 1962, Dorsey Owings, Inc. (herein called Dorsey), pursuant to the provisions of the Act, filed an amended charge to a charge filed with the Board on or about April 11, 1962, alleging, that Freight Drivers & Helpers Local 557, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of sec. 8(b) (4) (i) and (ii), subparagraph (B), of the Act.

"3. The aforesaid amended charge was referred to petitioner as Regional Director of the Fifth Region of the Board.

"4. There is, and petitioner has, reasonable cause to believe that:

"(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

"(b) Respondent maintains its principal office at Baltimore, Maryland, and at all times material herein respondent has been

Dorsey is a common carrier of freight by motor vehicle, with its terminal located on a farm off the Columbia Pike, Route 29, some five miles south of Route 40, near Ellicott City, Maryland. In March 1962 it employed fourteen drivers, two helpers, one mechanic and one driver-mechanic. It picks up and delivers freight at various terminals, warehouses and manufacturing plants, including the Crown Warehouse (Crown) and American Sugar Refining Co. (American), both in Baltimore, Maryland, and District Grocery (District) and Kane Warehouse (Kane), both in Washington, D. C.

On March 19 most of Dorsey's employees, who are members of Local 557, went on strike and picketed the entrance to Dorsey's property. Within a week, all but one of Dorsey's employees returned to work, but since then varying numbers have continued the strike. Beginning in the latter part of March and continuing to the date of trial, the striking employee or employees, with an organizer from Joint Council 62, International Brotherhood of Teamsters, who has been assigned to Local 557 for the Dorsey strike, have picketed Dorsey's terminal in the early mornings and at various times during the afternoons, but at other times have followed Dorsey's trucks to their destinations and have picketed outside the gates of Crown,

American and others, while Dorsey's trucks were inside. So much is not disputed.

The disputed facts are whether Local 557(i) has induced and encouraged individuals employed by Crown, District, Kane, American and others to engage in strikes, or refusals in the course of their employment to handle or work on articles or commodities delivered by Dorsey, or (ii) has threatened, coerced and restrained Crown, District, Kane and American with an object of forcing or requiring Crown, District, Kane and American to cease using, handling, or otherwise dealing in and with the articles and commodities delivered by Dorsey and to cease doing business with Dorsey.[4]

The relevant law before the 1959 amendment is fully discussed in Local 761, Intern. Union of Electrical, etc., Workers v. National Labor Relations Board, 366 U.S. 667, 677, 81 S.Ct. 1285, 6 L.Ed.2d 592, and in N. L. R. B. v. Local 294, International Brotherhood of Teamsters, etc., 2 Cir., 284 F.2d 887. The purpose, effect and legislative history of the 1959 amendment are discussed in N. L. R. B. v. Highway Truck Drivers, etc., Teamsters Local 107, 3 Cir., 300 F.2d 317, 44 LC ¶ 17,457, p. 26,197. It is unnecessary to repeat those discussions here. Inter alia, they trace the history of the so-called Moore Dry Dock doctrine,

---

engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

"(c) Dorsey, a Maryland corporation whose principal office is located in Ellicott City, Maryland, is engaged in business as a common carrier of freight by motor vehicle, to, between, through, and within various States of the United States, including the State of Maryland. Dorsey's annual revenue, derived from the interstate transportation of freight, is in excess of $50,000.

"(d) In the operation of its business Dorsey picks up freight destined for interstate shipment and delivers freight shipped from states other than those in which delivery is made at various terminals, warehouses and manufacturing plants, including Crown Industrial Park,

District Grocery Stores, Kane Warehouse Company and American Sugar Refining Co. (herein respectively called Crown, District, Kane and American), and other employers, all of whom are persons engaged in commerce or in industries affecting commerce.

"(e) At all times material herein, respondent has been engaged in a labor dispute with Dorsey.

"(f) At no time material herein has respondent had any labor dispute with Crown, District, Kane, American, or any other person doing business with Dorsey."

4. It should be noted that there is a proviso in sec. 8(b) (4) (ii) (B) "That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

first uttered by the Board in Sailors' Union of the Pacific (Moore Dry Dock Co.), 92 N.L.R.B. 547, 549 (1950). The Board there said: "When a secondary employer is harboring the situs of a dispute between a union and a primary employer:

" * * * In the kind of situation that exists in this case, we believe that picketing of the premises of a secondary employer is primary if it meets the following conditions: (a) The picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs; (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer."

For a time, a fifth condition, namely, that picketing at neutral premises (as of trucks of a primary employer while making delivery to customers) will not be regarded as privileged primary picketing absent a showing that the primary employer has in the vicinity no permanent establishment that may be picketed effectively, laid down in Brewery & Beverage Drivers & Workers (Washington Coca Cola), 107 N.L.R.B. 299, was regarded as absolute. But later cases under sec. 8(b) (4) (A), as it stood before 1959, held that violation of the fifth criterion showed only that the secondary picketing had an objective, other than persuading the primary employees, not that the picketing necessarily had the particular objective which sec. 8(b) (4) (A), as it stood before the 1959 amendment, forbade. N. L. R. B. v. Local 294, Teamsters, supra, 284 F.2d at 891. The 1959 amendment undoubtedly strengthens the "fifth condition", but does not make it an absolute criterion of primary picketing.

In all cases, the court must consider the totality of the conduct in order to determine the object of the picketing, keeping in mind the rules stated in N. L. R. B. v. Teamsters Local 107, supra, 300 F.2d at 321, that compliance with the Moore Dry Dock standards "at most gives the picketing only presumptive validity. * * * Even under that doctrine, the union must conduct its picketing so as to minimize the impact thereof on the secondary employer * * * and where, as here, the union deliberately enmeshes secondary employers and employees in the dispute, the doctrine has no application." (Citations omitted) [5]

The evidence in this case shows that the employer, Dorsey, had a permanent establishment that might be picketed effectively. The picketing at Crown and American was several hundred feet from the trucks, which were in most instances stopped at a point when the driver's view of the gate was obstructed by an intervening building.[6] The picketing at Kane was on the street reasonably close to the loading platform. However, the organizer from Baltimore made threats to Kane's management that they would picket its platform if the trucks were allowed to remain on the premises to unload, and the Kane employees actually engaged in a work stoppage. Similar threats were made to District's management by the Baltimore organizer and by the business agent of the Teamsters' Local in Washington which represented

---

5. The Court has also read and considered the cases cited by the parties, including: Piezonki d/b/a Stover Steel Service v. N. L. R. B., 219 F.2d 879; Highway Truck Drivers v. N. L. R. B., D.C.Cir., 1962, 302 F.2d 897; Sales Drivers, etc. v. N. L. R. B., 97 U.S.App.D.C. 173, 229 F.2d 514, 515; N. L. R. B. v. General Drivers, 5 Cir., 225 F.2d 205; IBEW, Local Union 861 v. Plauche Electric, Inc., 135 N.L.R.B. 41; United Plant Guard Workers of America v. Houston Armored Car Co., 136 N.L.R.B. 9; Warehouse Employees' Union Local 730 v. C. R. Sheaffer and Sons, 136 N.L.R.B. 88.

6. At Crown several trucks of other carriers hauling goods of other concerns to the Crown warehouse turned back or waited until the pickets left. At American several trucks waited outside until the pickets left, and one truck leaving the premises blocked the regular exit at 4 p. m. so that American's employees could not get out.

some of District's employees. There is a reasonable inference, but no direct evidence, that the same sort of threat was made to Crown.

Based on these and other facts in evidence, I find that the union did not conduct its picketing so to minimize the impact thereof on the secondary employer, but that it deliberately enmeshed the secondary employers and their employees in the dispute. There is reasonable cause to believe that an object of the acts and conduct of the respondent, set forth above, was to force and require Crown, District, Kane and American to cease doing business with Dorsey.

It is not necessary or proper for this Court to decide whether or not the acts and conduct of Local 557 violated sec. 8(b) (4) (i) and (ii) (B). The question is whether there is reasonable cause for petitioner to believe that they did and do so violate those provisions. This Court finds that such reasonable cause exists.

In addition to the undisputed findings of fact set out in note 3 above, the Court makes the findings of fact and conclusions of law set out in notes 7 and 8 below.

7. *Findings of Fact,* continued:

"4. There is, and petitioner has, reasonable cause to believe that:

\* \* \* \* \*

"(g) In furtherance of the aforesaid labor dispute, set forth in subparagraph (e) above, respondent, since on or about March 26, 1962, threatened to picket the premises of Crown, District and Kane, and has picketed the premises of Crown, Kane and American.

"(h) As a result of respondent's acts and conduct aforesaid, Kane's employees refused to perform services for Kane.

"(i) By the acts and conduct set forth in Findings of Fact 4(g) and 4(h) above, and by other means, respondent has engaged in, and has induced and encouraged individuals employed by Crown, District, Kane, American, and by other persons engaged in commerce or in industries affecting commerce, to engage in, strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities or to perform services, and has threatened, coerced and restrained Crown, District, Kane, American, and other persons engaged in commerce or in industries affecting commerce.

"(j) An object of the acts and conduct of respondent set forth in Findings of Fact 4(g), 4(h) and 4(i) above, was and is, to force or require Crown, District, Kane, American, and other persons, to cease using, selling, handling, transporting, or otherwise dealing in the products of, and to cease doing business with Dorsey.

"(k) The acts and conduct of respondent set forth in Findings of Fact 4(g), 4(h), 4(i) and 4(j) above, occurring in connection with the operations of Dorsey, Crown, District, Kane and American, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and tend to lead to, and do lead to, labor disputes burdening and obstructing commerce and the free flow of commerce.

"5. It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in Findings of Fact 4(g), 4(h), 4(i) and 4(j) above, or similar or like acts and conduct."

8. *Conclusions of Law:*

"1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under sec. 10(*l*) of the Act is empowered to grant injunctive relief.

"2. There is, and petitioner has, reasonable cause to believe that:

"(a) Respondent Freight Drivers & Helpers Local 557, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a labor organization within the meaning of secs. 2(5), 8(b) and 10(*l*) of the Act.

"(b) Dorsey is engaged in commerce within the meaning of secs. 2(6) and (7) of the Act.

"(c) Crown, District, Kane, and American are engaged in commerce or in an industry affecting commerce.

"(d) Respondent has engaged in unfair labor practices within the meaning of sec. 8(b) (4) (i) and (ii), subparagraph (B), of the Act, affecting commerce within the meaning of secs. 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in sec. 1(b) thereof.

"3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before

There remains only to consider the scope of the temporary injunction. Although the facts in this case are not as strong as the facts in N. L. R. B. v. Teamsters' Local 107, supra, and some other cases, the principles stated therein indicate clearly that the broad injunction requested by petitioner, set out in note [9] below, is justified and should be issued.

the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation or repetition, of the acts and conduct set forth in Findings of Fact 4(g), 4(h), 4(i) and 4 (j) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past."

9. *Order Granting Temporary Injunction*

"This cause came on to be heard upon the verified petition of John A. Penello, Regional Director of the Fifth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to sec. 10(l) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court, upon consideration of the pleadings, evidence, briefs, argument of counsel, and the entire record in the case, has made and filed its Findings of Fact and Conclusions of Law, finding and concluding that there is reasonable cause to believe that respondent has engaged in, and is engaging in, acts and conduct in violation of sec. 8(b) (4) (i) (ii), subparagraph (B) of said Act, affecting commerce within the meaning of secs. 2(6) and (7) of said Act, and that such acts and conduct will likely be repeated or continued unless enjoined.

"Now, therefore, upon the entire record, it is

"ORDERED, ADJUDGED AND DECREED that, pending the final disposition of the matters involved pending before the National Labor Relations Board, respondent Freight Drivers & Helpers Local 557, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be, and they hereby are, enjoined and restrained from:

"(a) Threatening to picket, or picketing, the premises of Crown Industrial Park, District Grocery Stores, Kane Warehouse Company, American Sugar Refining Co., or the premises of any other person engaged in commerce or in an industry affecting commerce doing business with Dorsey Owings, Inc.

"(b) In any manner or by any means, including picketing, orders, directions, instructions, requests, or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by Crown Industrial Park, District Grocery Stores, Kane Warehouse Company, American Sugar Refining Co., or by any other person engaged in commerce or in an industry affecting commerce, to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any service, or in any manner or by any means, threatening, coercing, or restraining Crown Industrial Park, District Grocery Stores, Kane Warehouse Company, American Sugar Refining Co., or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is to force or require Crown Industrial Park, District Grocery Stores, Kane Warehouse Company, American Sugar Refining Co., or any other person, to cease using, selling, handling, transporting, or otherwise dealing in the products of or to cease doing business with Dorsey Owings, Inc."